UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
WALI SHIRZAY,                       )
                                    )
            Plaintiff,              )
                                    )
        v.                          )   Civil Action No. 10-11661-JLT
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
            Defendant.              )
_____)

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO AFFIRM THE COMMISSIONER'S DECISION

[Docket Nos. 15, 18]

January 19, 2012

Boal, M.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Social Security Disability Insurance ("SSDI") benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Wali Shirzay ("Plaintiff" or "Shirzay") asserts that the Commissioner's decision that he was disabled from September 30, 2007 through February 6, 2009, but not thereafter, is in error, [Docket No. 15], and the Commissioner, in turn, has moved to affirm [Docket No. 18].[1] This Court heard oral argument on the motion on January 18, 2012. For the reasons contained herein, I recommend that the District Court remand the case for reconsideration.

---

[1] The parties' motions have been referred to this Court for a report and recommendation. [Docket No. 13].

1

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. See 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. Rodriguez, 647 F.2d at 222; Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. § 405(g).

## II. FACTS AND PROCEDURAL HISTORY

### A. Procedural History

Shirzay filed his application for SSDI on June 13, 2008, claiming an inability to work since September 30, 2007, as a result of lupus with progressive avascular necrosis of the left hip.

(Administrative Record ("AR") 96). The application was denied initially (AR 53, 55-57), and upon reconsideration. (AR 54, 59-61). Administrative Law Judge ("ALJ") Matthew Levin conducted a hearing on April 6, 2010, which Shirzay attended with his attorney. (AR 22-52). The ALJ received testimony from Shirzay and Dr. Robert Lasky, a vocational expert. (Id.). On April 30, 2010, the ALJ issued his decision finding Shirzay disabled from September 30, 2007, the alleged onset date, through February 6, 2009, but not thereafter. (AR 4-21).

ALJ Levin's decision did not immediately become final because this case had been selected for review by the Decision Review Board. (AR 4). By letter dated August 6, 2010, the Decision Review Board notified Shirzay that it had not completed its review within the prescribed ninety-day period, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-3). Shirzay filed this action on September 21, 2010. [Docket No. 1].

B. Background

Shirzay was twenty-six years old on September 30, 2007, the onset date of his disability. (AR 17). He was educated to the fifth grade in India. (AR 26, 50). He has been participating in basic adult literacy classes and hopes to eventually obtain a GED. (AR 26, 265).

Shirzay has worked as a kitchen helper, waiter, and valet parking attendant. (AR 12, 37, 42, 113). Shirzay was diagnosed with lupus in 2003. (AR 10, 266). He was treated with steroids, which led to necrosis in his left hip. (AR 175, 177, 181). He worked at a restaurant until at least September 2006, but was advised on September 26, 2006 to change his job due to his chronic hip pain. (AR 269).

C. The Medical Evidence

On July 17, 2007, Dr. Elizabeth Matzkin, an orthopedist, noted that Shirzay's hip pain

sometimes limited his activities. (AR 193). She referred him to Dr. Eric Smith, a specialist. (AR 194). On November 5, 2007, about a month after the onset date, Dr. Smith noted that Shirzay had marked pain and serious limitations of his activities. Dr. Smith recommended that Shirzay undergo hip-replacement surgery due to necrosis. (AR 191-192). Shirzay decided, however, to investigate other options. (AR 28-29).

Ultimately, Shirzay elected to undergo hip decompression surgery in Beijing, China on August 6, 2008. (AR 28-29; 228, 248, 261, 264). He stayed at the hospital for a month thereafter for treatment. (AR 228). On or around September 2008, the Chinese surgeon stated that Shirzay "can't work until 6 months later." (AR 228). Shirzay testified that the procedure strengthened his hip. (AR 32-35). He also testified that he could get to his car, without carrying anything and that he drove to his appointments and classes, but would have to stop to stretch after driving a certain distance. (AR 35).

On August 11, 2008, Dr. Ludmila Perel, a state-agency physician, opined that Shirzay could then lift and carry five pounds frequently, ten pounds occasionally, stand and walk less than two hours in an eight hour day, and sit for six hours, with occasional climbing of stairs, balancing stooping, kneeling, crouching, and crawling. (AR 229-236).

On September 5, 2008, Dr. Maria Gorbovitsky, plaintiff's primary care physician, ordered x-rays. (AR 188). The x-rays revealed extensive sclerosis in the region of the femoral head typical of avuscular necrosis, with little change since prior studies done in November 2007. (AR 188). On September 30, 2008, Dr. Gorbovitsky reported that Shirzay needed a cane to walk, had pain on ambulation, and still needed a total hip replacement. (AR 240).

On December 11, 2008, Dr. Stanley Leitzes examined Shirzay at the request of the

4

Massachusetts Rehabilitation Commission. (AR 248–249). Shirzay reported to Dr. Leitzes that he could not work in a sitting capacity and that he could not sit for more than ten minutes. (AR 248). Dr. Leitzes observed that Shirzay did not appear to be in acute distress, ambulated with a slight limp and with the assistance of a cane, and that he did not have difficulty getting on and off the exam table. (AR 249).

On February 11, 2009, Dr. Howard Liu, a treating physician, wrote a letter stating that Shirzay had "improved since receiving both electrical stimulation and neuromuscular re-education in my office." (AR 259). He also stated that a January 2009 MRI "showed stable disease of the left hip." (AR 259). Dr. Liu cautioned, however, that Shirzay was "only able to walk for about 5 minutes, with the help of a cane, then pain developed." (AR 259). Dr. Liu further advised that Shirzay was "unable to lift anything heavy, and can only sit for 15 minutes, then pain developed. He is also very stiff in left hip when first getting up from sitting position." (AR 259). He opined that Shirzay was "definitely functionally impaired." [2] (AR 259).

On November 23, 2009, Shirzay complained to Dr. Douglas Ayres, another treating physician, that his left hip was growing more stiff, though not more painful, and that he was "less able to do [a] considerable number of activities during the workday." (AR 261). Shirzay could not "stand for prolonged periods at a time, more than perhaps 10 minutes." (AR 261). He could "ambulate distances as long as he [was] not carrying anything heavy," though Dr. Ayres was uncertain exactly how far Shirzay could travel. (AR 261).

Dr. Ayres observed that x-rays showed advanced avascular necrosis of the left femoral

---

[2] In its brief, the Commissioner misquotes the doctor's note as stating that Shirzay was "definitely functionally repaired." (Memorandum of Law in Support of Defendants' Motion to Affirm the Commissioner's Decision, Docket No. 19 ("Commissioner Br.") at 10).

5

head, cystic degeneration with collapse in the weight bearing zone of the articular cartilage, and secondary osteoarthritis on the opposing acetabulum articular cartilage. (AR 261).

Dr. Ayres also observed that Shirzay was "working hard to complete his GED degree, estimating he ha[d] another couple of years before this [could be] accomplished." (AR 261). Dr. Ayres opined that Shirzay was in a "difficult situation" because of the confluence of a bad economy; his lack of formal education; and inability to handle manual labor. (AR 261-262). Shirzay told Dr. Ayres that, once he received his GED, he felt he would be "employable in a broader range of employment options." (AR 262). He was unwilling to undergo hip replacement surgery due to the risk of postoperative complications. (AR 262). Dr. Ayres advised Shirzay to "focus[] on his completion of the studies, utilizing disability as needed." (AR 262). Dr. Ayres also recorded that Shirzay's hip decompression surgery "did not go well for him" and was a "very painful experience." (AR 261).

On March 2, 2010, Dr. Liu wrote that Shirzay could not perform office-type jobs "because of his fatigue and dizziness." (AR 264). Dr. Liu also stated that Shirzay suffered "fatigue and dizziness when working with [a] computer." (AR 263). He speculated that these symptoms may be related to lupus. (AR 263).

## III. DISCUSSION

An individual is entitled to SSDI benefits if, among other things, she has an insured status and, prior to its expiration, is disabled. See 42 U.S.C. § 423(a)(1)(A) and (E). Plaintiff's insured status is not challenged.

### A. Disability Standard and the ALJ's Decision

The Social Security Act (the "Act") defines disability, in part, as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3)(A) (similar). An individual is considered disabled under the Act

> only if his physical and mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). See generally Bowen v. Yuckert, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If he does not have an impairment of at least this degree of severity, he is automatically not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
> . . . .
>
> Fourth . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so he is disabled; if not he is not disabled.

Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

At step one, the ALJ found that Shirzay had not engaged in significant gainful activity since September 30, 2007, the onset date. (AR 10). At step two, the ALJ found that Shirzay suffered the severe impairment of "lupus with progressive avascular necrosis of the left hip." (AR 10). At step three, the ALJ held that Shirzay's impairments did not meet or medically equal any entry on the Listing of Impairments. (AR 10-11, 13). In assessing residual functional capacity, the ALJ found that, from September 30, 2007 through February 6, 2009, Shirzay could perform only significantly less than sedentary work. (AR 11). At steps four and five, the ALJ found that, from September 30, 2007 through February 6, 2009, Shirzay could not perform his past work or the work associated with other jobs existing in significant number in the national economy. (AR 11-12). Accordingly, the ALJ found that Shirzay was disabled from September 30, 2007 through February 6, 2009. (AR 12).

The ALJ next found that Shirzay improved medically as of February 7, 2009. (AR 13). He concluded that, as of February 7, 2009, Shirzay had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he was limited to unskilled work with an "at will sit or stand option and no bending." (AR 13). The ALJ again found that his residual functional capacity still prevented Shirzay from returning to his past relevant work. (AR 15). However, the ALJ found that Shirzay could perform the work associated with jobs existing in significant numbers in the national economy, such as semiconductor loader and table worker. (AR 16). Accordingly, the ALJ found Shirzay not disabled from February 7, 2009 through the date of the decision. (AR 16).

B.   Plaintiff's Challenge to the ALJ's Decision

Shirzay argues that the ALJ erred in finding that his disability ended on February 7,

2009. Shirzay points out that the ALJ based his determination that Shirzay's disability ended on four factors: (1) the Chinese surgeon's prediction that Shirzay would need six months of rest after the surgery before being able to work; (2) the stability of Shirzay's disease; (3) the residual functional capacity assessments of state agency consultants; and (4) Shirzay's activities. Shirzay argues that none of those factors support the ALJ's determination of medical improvement sufficient to enable him to work. (Shirzay Br. at 10-11).[3] This Court agrees.

1. *The Medical Improvement Standard*

Once a disability has been found, the Commissioner may not terminate the benefits unless substantial evidence demonstrates that either a claimant has improved to the point of being able to engage in substantial activity, or the claimant's condition was not as severe as originally thought. Miranda v. Sec'y of Health, Educ. and Welfare, 514 F.2d 996, 998 (1st Cir. 1975). The fact that a determination was made both to award and terminate benefits following the same proceeding is a distinction without a significance. Corrigan v. Barnhart, 352 F.Supp.2d 32, 42 (D. Mass. 2004). Therefore, the ALJ in this case, having found that disability existed for the closed period from September 30, 2007 through February 6, 2009, was required to justify termination of Shirzay's benefits by substantial evidence demonstrating at least one of the two situations contemplated by the First Circuit in Miranda.

Under the regulations, medical improvement is defined as "any decrease in the medical severity of [an] impairment" determined by "changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment." 20 C.F.R. § 404.1594(b)(1). In

---

[3] "Shirzay Br. __" refers to the Memorandum in Support of Plaintiff's Motion to Reverse the Decision of the Commissioner (Docket No. 16).

order to find medical improvement, the Commissioner is required to compare prior and current medical evidence in order to evaluate any change in the condition of the impairment. Id. at § 404.1594(b)(7). If medical improvement is found, the Commissioner must then determine whether the improvement has positively affected the claimant's ability to do work. Id. If so, the Commissioner must then establish that the claimant is able to engage in gainful activity before making a determination that the disability has ended. Id. at § 404.1594(c)(3)(i). A specific eight-step evaluation process is laid out in the regulations to ensure uniformity in decisions to terminate benefits. 20 C.F.R. § 404.1594(f).[4]

There is no requirement that a decision strictly announce that it is going to use the medical improvement standard. Corrigan, 353 F.Supp.2d at 43. "Rather, the important question is whether the evaluation in the decision as a whole reflects consideration of medical

---

[4] The eight steps are as follows:

(1) Is the individual engaged in substantial gainful activity?

(2) Does the individual have an impairment which meets or equals the severity of an impairment found in the Listing?

(3) Has there been medical improvement?

(4) If there has been a medical improvement, is it related to the individual's ability to do work?

(5) Do any exceptions to the medical improvement standard apply?

(6) Does the individual have a severe impairment or combination of impairments?

(7) Can the individual do past relevant work?

(8) If the individual cannot do past relevant work, can he or she do any other work?

20 C.F.R. § 404.1594(f).

improvement and its relation to ability to work, and whether a conclusion drawn from such consideration is supported by substantial evidence." Id. Applying this standard, and based on a review of the record, this Court finds that the ALJ's determination that Shirzay was no longer disabled as of February 7, 2009 is not supported by substantial evidence.

    *2.*    *The Chinese Surgeon's Prediction That Shirzay Needed An Additional Six Months Before He Could Work*

The ALJ appears to have chosen a termination date of February 7, 2009 by counting six months from the date of Shirzay's surgery on August 6, 2008 in China, based on the Chinese surgeon's opinion that Shirzay needed an additional six months before he could work again. (AR 13). However, that opinion indicates that Shirzay stayed in the hospital for thirty-three days and that the Chinese doctor stated Shirzay could not work for six months after that. (AR 228). If such a prediction were a valid measure of medical improvement, the improvement would not have occurred until the end of March 2009. More importantly, the surgeon's statement was nothing more than a prediction regarding the outcome of the surgery, a surgery that Shirzay's treating doctors considered to be too late for any benefit, given the advanced stage of his necrosis. (AR 269).

    *3.*    *The Stability Of Shirzay's Disease*

The ALJ also relied on a finding that Shirzay's disease appeared to be stable as of January 2009. However, the word stable connotes that the condition was unchanged, not that it was cured or even improved. See Merriam-Webster's Medical Desk Dictionary at 765 (1996) (defining "stable" as "not changing or fluctuating"). Indeed, Dr. Liu, a treating physician, observed that although Shirzay's disease of the left hip was stable, Shirzay "was still only able to walk for about 5 minutes, with the help of a cane, then pain developed." (AR 259). He also

11

observed that Shirzay was unable to lift anything heavy and could only sit for 15 minutes. (Id.). He also observed that Shirzay was "definitely functionally impaired." (Id.).

In addition, in late November 2009, Dr. Ayres, a treating physician, observed that x-rays showed advanced avascular necrosis of the left femoral head, cystic degeneration with collapse in the weight bearing zone of the articular cartilage, and secondary osteoarthritis on the opposing acetabulum articular cartilage. (AR 261). Shirzay's description of his level of impairment to Dr. Ayres indicates that his condition may have been getting worse. (See AR 261 (stating that his left hip was getting more stiff and he was less able to do a considerable number of activities during the day)).

4. *The ALJ's Reliance On The Non-Examining Physician's Assessments*

The ALJ's reliance on the state agency consultant's assessments is similarly misplaced. Both consultants expressed opinions during the period that the ALJ had found Shirzay to be disabled: one in August 2008 and another in December 2008. (AR 229-236, 250-257). Accordingly, those opinions do not provide evidence that supports a determination that Shirzay was no longer disabled as of February 2009.

5. *The ALJ's Reliance On Shirzay's Activities*

Finally, the ALJ relied on Shirzay's activities of daily living to support his finding that Shirzay was no longer disabled as of February 2009. He noted that the record indicates that Shirzay is able to: ambulate long distances as long as not carrying anything heavy; sit down and work with a computer; drive without assistance; attend two 3-hour GED classes per week; keep medical appointments; and perform activities of daily living without assistance. (AR 14). The ALJ's catalog of Shirzay's activities is not completely accurate. Although Dr. Ayres noted that

12

Shirzay can ambulate distances as long as not carrying anything heavy, he stated that "we do not know how far or how long he could ambulate." (AR 261). Indeed, he notes that Shirzay was less able to do a considerable number of activities as of November 2009 and that his hip was getting more stiff, but not necessarily more painful. (AR 261).

Moreover, the record actually shows that Shirzay could not work with computers. (AR 263-264). In addition, the ALJ relies on activities, such as driving to doctors' appointments and attending classes, that Shirzay engaged in prior to February 2009. Although Shirzay drove without assistance, he drove only short distances and had to stop and stretch. (AR 35). He had attended adult literacy classes since 2003, and for some of that period the ALJ found him disabled. (AR 265). An ability to attend classes for three hours, two days a week, is not equivalent to being able to engage in substantial gainful activity. See, e.g., Parish v. Califano, 642 F.2d 188, 191 (6th Cir. 1981). Accordingly, based on its review of the record, the Court finds that the ALJ's decision to terminate benefits as of February 7, 2009 is not supported by substantial evidence.

   6. *Shirzay Has Not Waived His Objection To The ALJ's Medical Improvement Finding*

Citing Mills v. Apfel, 244 F.3d 1 (1st Cir. 2001), the Commissioner argues that Plaintiff waived his objection to the ALJ's medical improvement finding because, at the hearing, counsel for Shirzay stated that surgery had helped but not fully resolved Shirzay's hip problem. (Commissioner Br. at 13). This Court disagrees.

The question here is whether the ALJ's decision that a medical improvement had occurred is supported by substantial evidence. Nothing in the regulations suggests that an ALJ's obligation to support his findings with substantial evidence is necessarily extinguished by

13

conduct at the hearing. Indeed, "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 110-11 (2000).

Although Mills v. Apfel contemplates that a Social Security claimant may waive an issue by failing to raise it before the ALJ, the case is inapposite. In Mills, the ALJ determined, at step four, that the claimant could perform several past jobs. Id. at 8. On appeal, the claimant argued that because she had not performed the jobs the ALJ identified long enough for them to qualify as past relevant employment, the ALJ erred by failing to make a step-five determination. Id. The First Circuit held that the claimant waived the issued by failing to raise it, during her hearing, when the ALJ could have corrected the alleged error by moving on to step five. Id.

The error alleged in this case concerns whether there is substantial evidence to support the ALJ's finding of medical improvement sufficient to enable Shirzay to work. The ALJ's decision must be supported by substantial evidence. The Court has found that it is not.

In any event, even if Shirzay's conduct at the hearing could be construed to waive the ALJ's finding that there was a medical improvement, that finding, as described above, is not the end of the analysis. The ALJ must then find that the improvement has positively affected Shirzay's ability to do work and such finding must be supported by substantial evidence. Here, the ALJ's finding that Shirzay was able to work commencing on February 7, 2009 was not supported by substantial evidence.

## IV.  CONCLUSION

For the foregoing reasons, I recommend that the District Court DENY the Commissioner's Motion to Affirm [Docket No. 18], and REMAND the case to the

Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further findings and/or proceedings consistent with this report and recommendation.

## V. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital,199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge